IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARCUS BROWN,                          )
                                       )
               Plaintiff,              )
                                       )
     v.                                )     No.  08 C 1701
                                       )
CHIEF JENNIFER WITHERSPOON,            )
et al.,                                )
                                       )
               Defendants.             )

<u>MEMORANDUM OPINION AND ORDER</u>

Marcus Brown ("Brown") has filed a self-prepared 42 U.S.C.
§1983 ("Section 1983") Complaint against Chief of Corrections
Jennifer Witherspoon of the Lake County Jail ("Jail") and a
number of other personnel at the Jail, accompanying his Complaint
with an In Forma Pauperis Application ("Application") and a
Motion for Appointment of Counsel ("Motion").[1]  This memorandum
opinion and order will address all of Brown's filings.

To begin with, the Application includes a certification by
the Jail's fiscal officer reflecting summary information as to
Brown's trust fund account there as of February 18, 2008--but
that certification is unaccompanied by a printout covering all
transactions in Brown's account during the six-month period
preceding his current filing, as is required by 28 U.S.C.

---

[1]  All three submissions are on forms provided by this
District Court's Clerk's Office for use by persons in custody,
with the information called for in each document having been
supplied in handwritten form.

§1915(a)(2).[2]  That omission is puzzling, because Brown has
attached to the Application a copy of his Inmate Request Form
(also dated February 18) in which he asked for such a printout--a
request that carries an "OK" staff response--yet the Complaint
and other documents (but not the printout) were not received in
the Clerk's Office here until March 24, although Brown's
signature to the Complaint carried the same month-earlier
February 18 date.

Given the March 24 filing date of the Complaint and
associated documents, it would seem most likely that Brown did
not transmit that filing to this District Court until well after
the February 18 date.  Why then the omission of the trust fund
printout from that filing?[3]  This Court has no way of knowing on
whose doorstep that omission should be placed, but there is no
need to pursue any inquiry along those lines.  Instead this Court

_____

[2]  All further references to Title 28's provisions will
simply take the form "Section--."

[3]  This is not the first time that Brown has confronted this
Court with a comparable delay.  In November 2006 he filed a
purported Section 1983 action against Jail personnel (Case No.
06 C 5915, referred to in his current Complaint ¶IV--more on that
lawsuit a bit later), asserting another claimed constitutional
violation.  As this Court's November 7, 2006 memorandum order at
2 n.2 reflects, in that case as well there was "an unexplained
gap of 1-1/2 months between the preparation of the Application
and printout and the Clerk's Office's receipt of the Complaint."
But at least in that instance Brown tendered the required
printout, while here he apparently did nothing during the gap
period to obtain the requested printout and submit it as part of
his documentation.

is transmitting a copy of this memorandum opinion and order to

the Jail, with a directive that a printout for the entire period

from September 1, 2007 to the current date be sent to the

following address forthwith, with Case No. 08 C 1701 being

referred to in the transmittal:

>     Office of the Clerk
>     United States District Court
>     219 South Dearborn Street
>     Chicago IL 60604
>
>     Attention:   Fiscal Department

In the meantime, however, Brown is granted leave to proceed

without prepayment of the entire $350 filing fee, although he

will be liable to pay that full amount in future installments.[4]

---

[4]   There is a serious question whether this action should be
entertained at all.  This Court properly included a comparable
Section 1915(b) requirement in its dismissal order in Case No.
06 C 5915, so that Brown then owed a $350 filing fee, payable in
installments, in that case.  Yet the only payment he made toward
that obligation was one later in November 2006--only the $22.50
initial payment specified in this Court's November 7, 2006
dismissal order.  That is frankly unconscionable:  In the
certification that forms part of the current Application, the
Jail officer reports that the average monthly deposits to Brown's
account during the preceding six months were $53.33, yet Brown
has not paid a dime toward his $327.50 indebtedness during that
period or the nine months preceding it.  True enough, Section
1915(b)(2) directs the custodial institution to forward payments
on account to the Clerk's Office, but the Clerk's Office lacks
the resources and personnel to police such payments for the huge
volume of prisoner litigation--and most importantly, the statute
makes clear that the obligation is that of the prisoner (in this
case Brown).  This Court sees no obligation on its part to be
solicitous of a scofflaw such as Brown.  No further filings by
him will be entertained without a showing of bona fide efforts to
comply with his statutory obligation to honor his debt to the
federal court system, now amounting to $677.50.

That subject will be addressed in detail promptly after the required printout is received here.

As for the Motion, although Brown has not filled out a response to its paragraph 2, which requires his declaration as to his attempts to retain counsel on his own, he has attached photocopies of envelopes addressed to a number of lawyers. This Court will proceed on the premise, though unstated specifically, that Brown had transmitted requests for representation to each of those addressees. That gives Brown the benefit of the doubt, because he has provided nothing to indicate the content of any of his communications or of any responses he received. That however will be treated as a nonproblem, because the Motion has to be denied as moot in all events because of what follows in this opinion as to the substance of Brown's claims.

Those claims have been set out at length in the Complaint. Although Brown somehow seeks to multiply his asserted grievances, the first five of his seven asserted grounds really set out a single claim (see NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir. 1992)), all stemming from his having been kept in administrative detention about 4-1/2 months after he claims he was entitled to be relieved of that status back in August of 2006. This is a summary of Brown's other two claims:

> 1. Claim 6 asserts a failure to keep him protected against another inmate, Emmanuel Johnson ("Johnson"), who

was the subject of a "keep separate" court order, and who

attacked Brown when the two encountered each other.

    2.   Claim 7 asserts a failure to provide Brown with

proper medical care after the Johnson encounter.

This Court has conducted the initial screening of the

Complaint that is required by Section 1915A(a), for which purpose

it has had the benefit of voluminous documentation that Brown has

attached to the Complaint, including (1) some departmental

correspondence from the Sheriff's Office in connection with some

of his grievances, (2) a series of Inmate Request Forms showing

Brown's numerous requests and the responses he received from

Chief Witherspoon or other members of the staff and (3) some

Inmate Grievance Forms and Reports of Disciplinary Committee

Findings.  Even though the general principle applicable to

reviewing complaints in substantive terms is that a plaintiff's

allegations are to be accepted as true, that principle is

tempered by the sensible doctrine that if documents attached to

the complaint negate a plaintiff's allegations, those documents

"trump the facts or allegations presented in the Complaint"

(Chicago Dist. Council of Carpenters Welfare Fund v. Caremark,

Inc., 474 F.3d 463, 466 (7th Cir. 2007))--in other words, a

plaintiff such as Brown may plead himself out of court.

Before this opinion turns to the attached documentation for

that purpose, it should be said at the outset that it is not at

all clear that Brown has satisfied his obligation to exhaust all available administrative procedures--something that 42 U.S.C. §1997e(a) makes a prerequisite to his filing suit.  Resolution of that issue of course depends on whether any administrative review is available beyond the internal proceedings evidenced by Brown's attachments, information that this Court does not have.

But even if Brown has indeed exhausted his administrative remedies, the materials that he has attached to the Complaint confirm that no constitutional deprivations were involved in the matters about which he complains:

1.  As to the first five claims, either or both of two flaws doom them as potential sources of Section 1983 relief:

(a)  One of the numerous forms attached to the Complaint as exhibits (the barrage of such documents--for example, one Inmate Request Form after another, often as an almost daily repetition on the same subject--not only portrays Brown as a constant complainer but leaves no room for doubt as to his keen awareness of any claimed violation of his rights) is an August 23, 2006 Inmate Grievance form in which Brown complained that the failure to release him from restricted custody on August 20 violated his due process rights--the selfsame claim that he now makes the gravamen of his first five claims in this action.

Yet when Brown filed his Section 1983 suit in November
2006, when the same custodial status continued to
exist, he did not advance that claim as a predicate for
relief.  That omission would appear to bar the current
claims on claim preclusion grounds.

(b)  Even apart from that, the response to that
Inmate Grievance was that removal from such restricted
status required a determination by then Chief Patrick
Firman (who, not incidentally, was the first named
defendant in Brown's 2006 lawsuit, but was not then
targeted with the claim now asserted).  That response
went on to invite Brown to submit a request for
reclassification, but he attaches nothing to show that
he followed up on that.  That is not the stuff of which
constitutional deprivations are formed--at worst Brown
suggests a purported violation of internal Jail
regulations as a matter of administrative procedure,
something that this Court learned very early in its
judicial tenure did not implicate federal due process
considerations (see, e.g., Shango v. Jurich, 681 F.2d
1091, 1100-01 (7th Cir. 1982), enunciating a principle
often repeated since then).

2.  As to Brown's encounter with Johnson, what is
reflected by the attachments is that as soon as any

potential encounter between the two took place Brown was ordered to return to his cell--but he disobeyed that direct order, and the consequent attack by Johnson then followed (and would not have taken place but for) that disobedience (see attached Exs. 1A and 1B, the Report of Disciplinary Findings and the ensuing February 1, 2008 Disciplinary Appeal Response issued by Chief Witherspoon).[5]  To charge a Jail officer with a violation of Brown's constitutional rights when that officer actually sought to avoid any Johnson-Brown confrontation is totally without merit.

3.    Brown's claim of constitutionally inadequate care for a "serious medical need" under the principle established by Estelle v. Gamble, 429 U.S. 97, 104 (1976) and its progeny is also totally empty--see attached Ex. 2, the Memo confirming the minor nature of Brown's injury stemming from the Johnson encounter.

In summary, this Court's Section 1915A(a) screening has revealed that Brown has "fail[ed] to state a claim upon which relief may be granted," which under Section 1915A(b)(1) constitutes a ground for dismissal.  Both the Complaint and this

---

[5]  Brown has also attached the Report of Disciplinary Committee Findings as to inmate Johnson, pursuant to which Johnson was also subjected to a disciplinary lockdown because of the encounter.  Interestingly, that report includes a statement from inmate witness Melendez that confirmed Brown's failure to follow the correctional officer's order to return to his cell, followed by Johnson's throwing a garbage can at Brown.

action are accordingly dismissed, and this dismissal constitutes

a "strike" for purposes of Section 1915(g).[6]

_____

Milton I. Shadur
Senior United States District Judge

Date:   March 31, 2008

_____

[6]   This dismissal does not eliminate the need for the Jail's
delivery to this District Court of the printout covering
transactions in Brown's trust fund account at the Jail, as called
for earlier in this opinion.

LAKE COUNTY SHERIFF ADULT CORRECTIONAL DIVISION
## REPORT OF DISCIPLINARY COMMITTEE FINDINGS

| Inmate: | Brown, Marcus | Booking #: | L-108457 | Hearing #: | 08D022 |
|---|---|---|---|---|---|
| Date/Time of Hearing: | 01/15/08  /  0925 hrs | Date/Time of Incident: | | 01/13/08  /  1245 hrs. | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. | Failure to Lockdown (1) | | G | X | NG | G | X | NG |
| 2. | Refusal to follow orders (2) | | G | X | NG | G | X | NG |
| 3. | Fighting (11) | | G | X | NG | G | X | NG |
| 4. | Interference with staff duties and responsibilities (9) | | G | X | NG | G | X | NG |
| 5. | Disrupting the orderly operation of the facility (39) | | G | X | NG | G | X | NG |
| 6. | | | | | | | | |
| 7. | | | | | | | | |

| | | |
|---|---|---|
| 1. | | |

On Tuesday, January 15, 2008, I conducted a disciplinary hearing with inmate Brown. Inmate Brown informed me that Officer Sapyta told him to lockdown just prior to being hit in the facial area with the garbage can and he was protecting himself. Inmate Brown claims that it's classifications fault based on having his keep separate in the same housing unit.

After reviewing the report, speaking to Officer Sapyta and Officer Crittendon, the disciplinary committee finds that inmate Brown is Guilty of all charges.

Inmate Brown was provided staff assistance during his disciplinary hearing.

The Committee recommends 40 days disciplinary lockdown. (OUT DATE:   02/21/2008)

Note: Upon receipt of these findings, you have three days to file an appeal on an inmate grievance form.
Nota: Al recibo de estos resultados, tiene 3 (tres) dias para registrar una apelacion en un "forma de quejas".

Do you wish to appeal?:    (please initial)              MB
De sea usted apelar?       (firme con iniciales)    _____        _____
                                                    Yes/Si         No

Committee Chairperson

Member(s)                  Sgt. W. R. Kinville _____

                           Officer Stiff _____

                                    Administrative Review

I have reviewed the above and concur __X__ do not concur _____ with the findings.

Comments:

Name: _____    Date/Time: _____

Distribution when completed:   Jail Admin (Original +1) | Classification (2) | Max (1) | Inmate (1)

Ex. 1 A



# LAKE COUNTY ADULT CORRECTIONAL DIVISION INMATE GRIEVANCE RESPONSE FORM

_x_ Disciplinary Appeal Response          Date: February 1, 2008
___ Grievance Appeal Response
___ Grievance Response

Inmate Brown, Marcus    ID# 108457    Housing Unit 3N 19

Resolution: ___ Approved  X Denied  ___ Irresolvable ___ Improper format

**\*Explanation:** Inmate Brown, in your appeal you asked that the incident be investigated. It has been.

   Your request is denied because you stated in your hearing that " I had to protect myself", even after you admit that the officer had told you to lock down. I spoke to Ofcr. Crittendon also, who states Ofcr. Sapyta told you several times to go back to your cell and you questioned him "why", instead of returning to your cell. This was a violation because you disobeyed a direct order. She also states once you were hit, you charged at the other inmate to attack him after the officer told you to return to your cell again. You had no need to protect yourself after the initial hit, since the inmate was being secured by the officer. You would not have been charged if you had returned to your cell as directed. In regards to your subconscious telling you to turn, if the fact that both of the officers were yelling to you to return to your cell is counted as your subconscious then you were right to listen.

   The officer involved will be addressed by Administration and proper action will be taken if necessary.

   You asked that Ofcr. Krerowitz and Sgt. Novarro be investigated. You did not specify why you would like them investigated.

---

**\*If you wish to appeal this decision, check your inmate hand book for the procedure**

Signed _____ Printed ___ Chief ___

Ex. 18

...th Professionals, LTD

**Lake County Jail**

# Memo

Date:        1/30/08

From:        David Padilla
             DON

To:          Inmate brown marcus
Re:          Grievance 08g061



ASU-19

This note is in response to your grievance 08g061. Upon receiving your communication, I reviewed your chart. Your cut above the eye was superficial and did not require any stitches or steri strips. Doctor ordered motrin for you when he saw you on 1/22/08.

If your status changes and you feel the need to see, the Physician again fill out a Request Form.

If I can be of any other assistance, feel free to contact me.

David Padilla
DON.

Ex. 2